EUGENE E. MANN v. DELBERT HUGHES ET UX

73-151                                502 S.W. 2d 465

Opinion delivered December 3, 1973
[Rehearing denied January 14, 1974.]

*Gus R. Camp,* for appellant.

*Lee Ward,* for appellees.

LYLE BROWN, Justice. Appellant and appellees are the owners of adjoining tracts of land near the city of Piggott. The tracts are on the north side of the street and this case grows out of a dispute as to the boundary line between the two pieces of property. The difference between the parties concerns, roughly, some eighteen feet. Appellant bases his claim on a surveyed line; appellees contend that the true line is one established by common consent and acquiescence of the adjoining owners for some ten years. The main contention for reversal is that the chancellor erred in finding from a preponderance of the evidence that the boundary had been fixed by common consent and acquiescence.

At one time the parents of appellant owned both parcels of land. Appellant received his deed from his father in 1961. The elder Mr. Mann conveyed the Hughes (appellees) tract to Ezra Hardin and wife in 1958; the Hardins conveyed to appellees in October 1967. Evidently no survey was made by either of the parties to this case at the time of their acquisition.

Mrs. Hardin testified that she and her husband (now deceased) acquired title in 1958 and moved on the plot of ground in 1962. She said there was an old fence between the Hughes and Mann tracts, and described the old fence as being in close proximity to the boundary line which the court later fixed. She said she told appellant "maybe

the fence angled down through there" and told him that if so, he could set it back, but that was never done and "we just always counted the fence the line".

Appellee Delbert Hughes testified that at the time he bought the property there was a fence, wooden and woven wire running northerly between the properties and that this fence was pointed out by Mr. Hardin as being the boundary. He said there were shrubs and flowers, and a garden which he regularly planted, within the disputed strip; that appellant never attempted to use the disputed strip for any purpose; that in 1969 appellant approached the witness for permission to cause to be constructed a sewer line through the disputed strip, and that permission was granted but the line was never installed.

Witness Walter Riddle testified for appellees. He said he had been familiar with the property for the last twelve years. In times past he had hauled livestock to the slaughterhouse which was operated on appellant's property. He said that during those years there was a fence between the properties of the parties hereto and his description of the location also coincided with the line later fixed by the chancellor. He said "there was shrubbery, flowers, rose bushes and everything set on the inside on either side".

Appellant testified he had been familiar with the property since the time his father owned it. He said in years past there had been an old north and south fence between the properties which was located between the survey line and the line testified to by appellee Hughes and his witnesses. He said the fence upon which appellee relies for a consent boundary was not in existence in March 1963. He testified that the first part of that fence was started by him in 1963 and completed by working spare time at different intervals. He said part of the fence north of the slaughterhouse was built by him to trap animals. He testified the south part of the fence was built "to keep people from the east side from seeing how big a mess I had over there". He insisted the fence was partly burned and the rest of it was taken down, all in 1969. He denied that the Hardins occupied the disputed area when

they owned the tract. He said at the time the Hardins lived there he had no use for the disputed area and gave Mr. Hardin permission to use it as a garden.

Appellant's wife substantiated most of her husband's testimony. She added that appellee Hughes was agreeable to a survey and quoted him as saying: "What's a few feet this or that?" She said Hughes declined to pay any part of the cost of survey and also objected when her husband started erecting the fence on the surveyed line.

There was other testimony on both sides and we have given consideration to all of it. No useful purpose would be served by abstracting the testimony of each and all the witnesses. The location of the fence upon which appellee relies as the boundary by acquiescence is certainly not one-sided; in fact the testimony created a close question of fact. "When the evidence is conflicting or evenly poised, or nearly so, the judgment of the chancellor on the question of where the preponderance of the evidence lies is considered as persuasive." *Clark* v. *Mathis,* 253 Ark. 416 486 S.W. 2d 77 (1972).

Appellant contends that the line established by the court is not straight or properly described. We do not agree. The line fixed by the court first runs "northerly" to a point 4 1/2 feet east of a concrete slab and then runs due north the rest of the way. That description was very nearly in line with the description of the location of the old fence relied upon by appellees.

Appellant insists that the court erred in admitting into proof appellees' exhibit six. That was a picture introduced by appellees which was not mentioned in the interrogatories submitted to appellees. We find no prejudicial error or element of surprise. The picture is very similar to another picture introduced in evidence as exhibit five.

The court erred, says appellant, in permitting appellee Hughes to testify as to what his grantor (since deceased) told appellee about the location of the line. In the first place the testimony was invited by a question on

cross-examination. In the second place it was admissible as an exception to the hearsay rule. *Thacker* v. *Hicks,* 215 Ark. 898, 224 S.W. 2d 1 (1949); *Texas and N.O. Ry. Co.* v. *Broom,* 53 Tex. Civ. App. 78, 114 S.W. 655 (1908); *Knight* v. *Knight,* 178 Ill. 553, 53 N.E. 306 (1899).

Affirmed.